### KELLY v. HARRIS et al.

No. 7838—Opinion Filed Dec. 12, 1916.

Rehearing Denied Jan. 23, 1917.

(162 Pac. 219)

**1. Oil and Gas—Lease—Construction.**

The contract or lease examined, and held to be an ordinary oil and gas lease contract, and subject to the same rules of construction. It rests no right in the lessee to the real estate, nor any interest therein or right thereto, save to explore for oil, etc.

**2. Appeal and Error—Review—Findings.**

The court found the lessee and his assignee had forfeited their rights under the contract, and this evidence supports this finding, so we cannot disturb the same here.

**3. Contracts — Construction — Construction by Parties.**

The acts of the parties to a contract, when the terms of a contract are in doubt, may be considered with the view of construing the same; and, applying this rule here, the acts and conduct of Kelly, held to indicate an abandonment of the contract or lease.

(Syllabus by Hooker, C.)

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Thomas C. Kelly against Eliza Harris and J. W. Harris. There was a judgment for defendants, and plaintiff brings error. Affirmed.

John G. Ellinghausen and C. W. Lively, for plaintiff in error.

McDougal, Lytle & Allen and E. L. Cox, for defendants in error.

Opinion by HOOKER, C. This suit was commenced in October, 1914, by the plaintiff in error against the defendants in error in the district court of Creek county, Okla., to enjoin them from interfering with the plaintiff in drilling upon the real estate mentioned herein.

It is alleged in the petition that the defendants in error, J. W. Harris and Eliza Harris, on the 5th day of May, 1910, made an oil and gas lease with one J. E. Wise, the essential parts of which lease will be stated as follows:

"Know all men by these presents that Eliza Harris and J. W. Harris of Creek county, Oklahoma, grantors for and in consideration of $1.00 cash in hand paid, the receipt of which is hereby acknowledged, and of the royalties to be paid and covenants to be kept hereunder do hereby grant, bargain, sell and convey unto J. E. Wise of Creek county, Oklahoma, grantee, all the oil, gas, coal and other minerals in and to the herein-after described land, together with the exclusive right of ingress and egress at all times for the purpose of prospecting, drilling, mining and otherwise operating therefor, and to erect, maintain and remove all structures and appliances in connection therewith, including pipes and other means of transportation, reserving, however, the royalties and payments herewith stipulated. * * * To have and to hold unto said grantee the successors and assigns of said grantee forever upon the following terms. * * * In case operation for the drilling an oil and gas well be not begun within six months from final execution and delivery hereof, this conveyance shall be forfeited as to both parties, unless the grantee or successor or assigns of the grantee shall pay the grantor on or before the anniversary of this lease, according to the date, written below, $1.50 per acre for the period operations are delayed, but such vitality cannot be maintained by such payments for a greater delay than three years, without the written consent of the grantor. Payments as above provided for shall be deemed complete when made or tendered by a deposit of the amount to the credit of the grantor in the First National Bank of Sapulpa, Oklahoma. In case the grantee or successors or assigns of the grantee shall sink a well or shaft and discover either oil or gas or other minerals within the limitations of time herein provided for, this instrument shall be in full force and effect for twenty years from such discovery, and as much longer as minerals are produced in paying quantities. * * * This instrument is not intended as a mere franchise, but as a conveyance to the extent stated and is so understood by the parties."

And it is further alleged that the said J. E. Wise for a valuable consideration transferred and assigned in writing all his right, title, and interest in and to said lease to the plaintiff, Kelly, and that during the months of March and April, 1913, that said plaintiff caused a well to be drilled upon said premises for oil and gas to an approximate depth of 1,800 feet, at which depth oil and gas were found in paying quantities, but that before the well was finally completed the tools became fastened and were lost, and that immediately thereafter the plaintiff offered to drill a second well on the premises, but the defendants refused to permit him to do so, and threatened to do violence to him if he entered upon the premises for said purpose, and that by reason of said threat and refusal to allow him to enter upon said property and develop the same, he will suffer irreparable injury, unless said defendants be restrained and enjoined from interfering with him.

To this petition the defendants filed an answer and cross-petition, wherein they admit-

ted the execution of the lease on May 5, 1910, to J. E. Wise, and its assignment to the plaintiff, Kelly. They further admit that in March and April, 1913, Kelly drilled for oil and gas upon said property, and denied that oil was found in said well, or that gas was found in paying quantities; they admit that before said well was completed the tools became fastened and were lost, and state that the plaintiff plugged the well, and that no oil or gas has ever been produced therefrom; and they specifically deny that the plaintiff offered to immediately drill another well on said premises, and denied that he was prevented from doing so by them, but admit that after plaintiff had failed to comply with the terms of the lease, and said lease had expired by its limitations, they did tell the plaintiff they would not consent for him to go on the place again unless he developed the property as he had agreed to do. They deny that said well was ever operated, or that the efforts of the plaintiff had the effect to continue said lease in force for a period of 20 years; and they deny that the plaintiff has complied with the terms, covenants, and conditions of said lease.

By way of cross-petition they alleged that by the terms of said lease it was expressly provided that said lease shall not be given vitality by the payment of the yearly rentals for a greater delay in drilling than three years without written consent of the grantor. And the defendants denied that they, or either of them, had ever granted any written consent to the plaintiff, or to any one else in drilling or operating said lease, and they allege that by reason of the failure of the lessee and his assigns to operate said lease, the same had expired by its own limitation, and the lease was void and of no effect. They specially claim that the sinking of the well upon the premises by Kelly, which was afterwards plugged and not operated, was not in compliance with the terms of the lease, and would not have the effect to continue the same in force for a period of 30 years, or for any other period of time.

They further state that Kelly did not begin the drilling of the well upon said premises until the three years provided in the lease had almost expired, and when said well was drilled to the sand, and before the same was completed, it was plugged, and no effort had ever been made to operate the same, or to produce any oil or gas therefrom, and that no written consent had ever been granted for an extension of time within which to drill and operate said lease, and therefore they allege that said lease was void, and should be canceled and set aside.

They further allege that the plaintiff agreed with them that he would cancel said lease and would give them a written release, which agreement was made in July, 1913, and by the terms thereof, he relinquished all the claims he had upon said lease.

To this answer and cross-petition the plaintiff filed a reply, which consisted of a general denial.

Upon the trial of the cause it was agreed between the parties that the lease set forth above was entered into between said parties, and that the said Kelly entered upon said land in the months of March and April, 1913, and drilled a well in which a showing of oil was found, and approximately a million feet of gas was discovered. Thereafter the tools were lost in the hole, and the well was plugged, the casing drawn therefrom, and the rig taken from the premises, and no machinery of Kelly's has been upon the property since then. And it was further agreed that Wise paid the bonus for the lease and the rentals specified in the contract, and Kelly was able to develop the property.

The court below, after hearing the evidence, decided for the defendants in error, and by the judgment rendered therein, canceled the lease claimed by Kelly upon said property. From this judgment, Kelly has appealed here. He asserts that the words of conveyance used in this lease are similar to those of a deed to real estate, and in fact that this lease is more than the ordinary oil and gas lease, and that it is for an interest in the real estate separate and apart from the surface. He contends: First, that there can be no abandonment for the reason that a title to the land or an interest therein vested in him, and that the title cannot be divested from him except by adverse possession, tax sale, or some other process not contemplated here; second, that, no bad faith or fraud having been shown against the plaintiff, a forfeiture cannot be declared by the discovery of oil and gas prior to the termination of three years, and that it would be inequitable and unjust to declare a forfeiture when his failure to further develop was due to the refusal of the defendants in error to permit him to do so.

We have carefully considered these contentions, and we have come to the conclusion that the lease in question is not capable of that construction which the plaintiff in error places upon it. We regard this as an ordinary oil and gas lease, subject to the same rules of construction. This court in Kolachny v. Galbreath, 26 Okla. 780, 110 Pac. 902, 38

L. R. A. (N. S.) 451, in construing a lease similar to the one involved here, said:

"The lease relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth, an incorporeal hereditament."

And again, in the Frank Oil Company v. Belleview Gas & Oil Company, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, it is held:

"It seems to have been held in Diamond Plate Glass Co. v. Curless, 22 Ind. App. 346, 52 N. E. 782, and Diamond Plate Glass Co. v. Echelbarger, 24 Ind. App. 124, 55 N. E. 233, that similar instruments, granting the right to explore for and remove gas and oil for an indefinite period, are, in effect, leases creating tenancies from year to year, under section 7089, Burns 1901, which may be terminated by the tenant at the end of any year, without notice. But we cannot accept this view as correct. While a contract providing for an entry and removal of gas or oil from the premises is, perhaps, more than license, we are unable to believe that it constitutes such a tenancy as is contemplated by sections 7089, 7090, Burns 1901. It must be agreed that such a contract is equally binding on the parties to it. Suppose, for instance, that under such a contract as this one the operator shall enter and drill in a well which yields a much greater volume of gas, and is therefore much more valuable than was anticipated by the landowner when he made the bargain; will any one contend that the latter may avoid his contract and eject the operator by a three months notice to quit before the end of the first year, under section 7090, supra? And yet this is precisely what the doctrine leads to. There appears from the complaint no good reason why the contract should not be enforced against the appellees."

And further in the body of the opinion it is said:

"The peculiar wandering character of gas and oil precludes ownership in their natural state, and hence they are not subjects of sale and conveyance until they have been reduced to possession and placed under control by being diverted from their natural paths into artificial receptacles. In such cases the real subject of the contract is the mining of the gas or oil that may be found on the terms specified. The preliminary exploring is a mere incident that goes for nothing if unsuccessful, and unless oil or gas is found in paying quantities, then there is and was not at the inception of the contract anything to which it could attach. So the title in such contract is at least inchoate until the result of the drilling is ascertained. And if barren territory is developed, then there is no lease, no continuing contract, no conveyance of title, because nothing to pass under the agreement."

In the case of Priddy v. Thompson, 204 Fed. 955, 123 C. C. A. 277, Justice Sanborn speaking, it is said:

"(4) Oil and gas in the earth, unlike ore and coal, are fugacious, and are not susceptible to ownership distinct from the soil. A grant by lease or deed of oil or gas in a specified tract of land and of the right to occupy and use so much of the surface of the land only as may be necessary to prospect for and remove the gas and oil is not a grant of the oil and gas in the land, but of such a part thereof only as the grantee finds and reduces to possession. It vests no title to any oil or gas which he does not extract and reduce to possession, and hence no title to any corporeal right or interest. It is therefore insufficient to maintain ejectment by a grantee who has never taken possession of the land or prospected for or found any oil or gas under it. Kelly v. Keys, 213 Pa. 295, 62 Atl. 911, 110 Am. St. Rep. 547; Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, 906, 38 L. R. A. (N. S.) 451; Dark v. Johnston, 55 Pa. 164, 168, 93 Am. Dec. 732; Gillespie v. Fulton Oil & Gas Co., 236 Ill. 188. 86 N. E. 219; Funk v. Haldeman, 53 Pa. 229; Hicks v. American Natural Gas Co., 207 Pa. 570, 57 Atl. 55, 65 L. R. A. 209."

The contention of the plaintiff that there is something peculiar or different in the oil and gas lease in question in this case is, we think, without merit. The lease in question in the Frank Oil Company v. Belleview Gas & Oil Co., supra, "grants unto the Frank Oil Company of Independence, Kansas, second party, its successors or assigns, all the oil and gas in and under the premises described." As does the lease in this case.

It must be admitted here that neither oil nor gas was discovered in paying quantities as contemplated by this lease. The evidence discloses that the assignee of this lease permitted the three years to almost expire before he drilled for oil and gas upon said property. It must be conceded that neither oil nor gas in paying quantities was discovered. The well that was drilled was abandoned and plugged and the lessee without coercion removed the rig and the drilling machinery from the property. The lessee not having found oil nor gas in paying quantities, and the three years provided for by the contract having expired, the rights of Kelly, the lessee under said lease, ceased, and he was no longer entitled to explore said property.

This seems to be recognized by his own conduct, and the rule has oftentimes been

expressed by this court that where construction of a contract is in doubt, the act of the parties thereunder will frequently be resorted to for the purpose of ascertaining how they construed it. Applying that rule to the contract in question, it is apparent that Kelly recognized when his rights under the lease had ceased, and he was no longer entitled to drill upon this property by virtue of this contract.

The lower court found that he had abandoned his contract, and the evidence justifies this finding. And we are therefore of the opinion that the judgment of the trial court, holding that he had forfeited all his rights under this contract by virtue of his abandonment thereof, is correct, and this cause is affirmed.

By the Court: It is so ordered.