Note.—See under (1) 13 C. J. pp. 521, 523, § 482; 6 R. C. L. p. 835; 2 R. C. L. Supp. p. 218; 4 R. C. L. Supp. p. 443; 5 R. C. L. Supp. 371. (2) 13 C. J. p. 524, § 484; 22 C. J. pp. 1177, §1570; 1180, § 1573; anno. 17 L. R. A. 270 et seq.; 10 R. C. L. p. 1030; 2 R. C. L. Supp. p. 1142; 4 R. C. L. Supp. 687; 5 R. C. L. Supp. p. 583. (3) 22 C. J. p. 1295. § 1728. (4) 26 C. J. pp. 1062, 1065, § 6; 27 C. J. p. 73, § 208 (Anno). (5) 4 C. J. p. 1190, § 3227.

---

**NICHOLSON CORPORATION v. FERGUSON et al.**

No. 13691—Opinion Filed Sept. 29, 1925.

Rehearing Denied Jan. 19, 1926.

(Syllabus.)

**1. Oil and Gas—Lease Construed as "Granting Estate in Realty."**

The granting clause of the oil and gas lease in the instant case recited that the lessors have granted. demised, leased, and let, and by these presents do grant, demise, lease, and let unto the lessee all the oil and gas in and under the land, also the said tract of land for the purpose of entering upon, operating, and removing therefrom oil and gas for a term of five years and as much longer as oil or gas is produced thereon. Held, that this lease granted an estate in the realty covered thereby.

**2. Same—Measure of Damages for Breach of Covenant—Rights of Assignee of Lease.**

Under section 5980, C. O. S. 1921, the measure of damage for the breach of the covenants therein mentioned in a "grant of an estate in real property" is set out; held, that the estate mentioned in the foregoing syllabus conveyed by the oil and gas lease involved in the instant suit was such an interest as is referred to in said statute as an estate in real property and the measure of damage provided by said statute for the breach of the covenants recited therein is applicable as the rule in determining the damage sustained by the warrantee in an assignment of such lease.

**3. Appeal and Error—Right to Review Where Judgment Satisfies Demands.**

Where a cross-petitioner seeks to recover damages for breach of warranty set forth in an assignment of an oil and gas mining lease, such as the one in question in this suit, and he actually recovered, by the judgment of the trial court, the sum which in amount is what he would have been entitled to recover had other relief contained in the prayer of his cross-petition been granted, this court will not inquire into whether the trial court erred in failing to grant the other relief.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by J. B. Ferguson against Nicholson Corporation and the Kingwood Oil Company. Judgment for plaintiff, and Nicholson Corporation appeals. Affirmed.

Jno. F. Goshorn and W. E. Foster, for plaintiff in error.

Wm. M. Matthews and Arthur H. McLain, for defendant in error Kingwood Oil Company.

W. W. Noffsinger and A. L. Harris, for defendant in error J. B. Ferguson.

BRANSON, V. C. J. The judgment to reverse which this appeal is here was entered in the district court of Okmulgee county, Okla. In said court, J. B. Ferguson was plaintiff and the Nicholson Corporation and the Kingwood Oil Company, a corporation, were defendants. Herein the plaintiff in the lower court will be referred to as the plaintiff, and the Kingwood Oil Company, when not named, will be referred to as the defendant, and the Nicholson Corporation will be referred to as appellant.

The plaintiff sought injunctive relief against the appellant restraining it from taking gas from a gas well located on a certain tract of land alleged to be his property, for an accounting and damages to the amount of the value of the gas taken for a period of approximately three years prior to filing the suit. The defendant Kingwood Oil Company owned, among other lease holdings, an oil and gas lease located upon a tract of land lying immediately east of the northeast quarter of the southeast quarter of section 1, township 11 north, range 13 east. On this land the well was located. The granting clause of said lease was as follows:

"The said lessors * * * have granted, demised, leased and let, and by these presents do grant, demise, lease and let, unto the lessee * * * all the oil and gas in and under the following described tract of land, also the said tract of land for the sole and only purpose of entering upon, operating thereon and, removing therefrom said oil and gas for a term of five years from date and as much longer thereafter as oil or gas is produced thereon," etc.

Within the terms of said lease, the defendant had taken possession of 'what it supposed to be said leased premises and had drilled a well which proved to be a producer of natural gas in commercial quantities. Sometime thereafter the appellant, being in the smeltering business at Kusa, in said county, and purchasing gas for consumption in its business, secured an assignment of the said lease for a consideration, by it paid to the defendant, of the sum of $1,000. The moving cause of taking said assignment was the mutual understanding by both the defendant and rhe appellant that the gas well drilled on the land above described was located upon the land immediately east thereof, which was covered by the defendant's said oil and gas lease. The appellant connected its pipe line to said gas well which led to its said smelter and utilized gas for a period of, approximately, three years, when plaintiff notified appellant that said gas well was on his land and secured an injunction preventing the further taking of gas therefrom and prayed an accounting for the gas taken and award of damages of the value thereof. The defendant and appellant concur that the gas well was, by inadvertence and in good faith, drilled by the defendant upon the plaintiff's land, whereas the defendant thought that the well had been drilled upon its said lease. The appellant prayed reformation of the covenants of warranty contained in the assignment of the lease, so as to include the gas well in question—

"* * * By decreeing that said well and equipment is within the covenants of warranty in said assignment, although not located on the leasehold assigned, and that this answering defendant (designated here as appellant) have judgment upon said contract for such sum or sums as the plaintiff, J. B. Ferguson, upon a hearing had upon his petitions shows himself entitled to, plus the sum of $300, well royalty, which this answering defendant has paid the supposed owners in reliance upon the validity of said assignment."

The judgment of the trial court was in favor of the plaintiff in the sum of, approximately, $11,000. The said judgment further denied the said prayer of the appellant except to the extent that it was given judgment against the defendant in the sum of $1,000, the amount paid to the defendant for the assignment, with interest thereon, for the $300 well royalty paid to the fee owners of the leased land on which the gas well was supposed to be located.

There are two conclusions found by the trial court drawn in issue here by the petition in error filed by the Nicholson Corporation. One is directed against the plaintiff; the other is directed against the Kingwood Oil Company. The assignment directed against the plaintiff is that the judgment rendered against it is too large in that, conceding that the referee, whose report was confirmed by the district court, found the correct number of feet of gas taken, a wrong rate per cubic foot (7 cents) was applied, which it contends was erroneous, both, as a matter of law and as a matter of fact. The assignment directed against the defendant Kingwood Oil Company is to the alleged fact that the trial court erred in not reforming the covenant of warranty so as to include the well, and when so reformed appellant should have been given judgment against the defendant for breach of warranty to the amount of plaintiff's judgment against it.

We, think all the assignments pass with the proper determination of these.

The assignment directed against the plaintiff, above set out, draws in question the evidence, the appellant contending that by the report of the referee and the judgment of the court the plaintiff was awarded, in calculating the damages, a well gas rate of 7 cents, which was the highest rate, as shown by the evidence, it asserts, obtaining during the period gas was taken from the well, the referee fixing the recovery at the "utmost." The appellant contended that, since it is not denied by any party to the action that the well was drilled on the Ferguson land through error as to the lines bounding the lease in question, and in entire good faith, this is not the proper rule to apply. The rules of law set out in the cases cited must be referred to the evidence in the instant case to determine whether or not the court in reality charged against the appellant a rate per thousand foot as the "utmost" rate obtaining during the period. The evidence shows that in the vicinity the gas rate varied at the wells during the period appellant took the gas in question here from 4½ cents to 10 cents, and the court found as a fact that the value of the gas during the period was 7 cents per thousand, and on this basis calculated

the amount of the plaintiff's recovery against the appellant. The evidence was unsatisfactory and conflicting on the question, but such finding is not foreign to sufficient evidence to support it, and the issue raised by said first assignment must, therefore, be against the appellant.

We go to the assignment directed against the Kingwood Oil Company. At the basis of the contention of Nicholson Corporation lies the warranty, which, as quoted in its brief (page 52), is as follows:

"(The assignor) does covenant with the said assignee, heirs, successors or assigns that it is the lawful owner of the said lease and rights and interests thereunder and of the personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same and that said rights, interest and property are free and clear from all liens and incumbrances and that all rentals and royalties, due and payable thereunder have been duly paid."

To repeat, the appellant's prayer was that the said assignment be reformed so as to include the gas well in question and bring within the covenants of warranty the well and equipment thereof, and for judgment against the defendant Kingwood Oil Company upon the reformed covenant for a sum equal to the amount which plaintiff might recover against it. The trial court denied the reformation prayed, but rendered a judgment in favor of the Nicholson Corporation against the Kingwood Oil Company as set out, supra.

When the situation is viewed as if the well had in fact been on the leased premises and by reason of failure of title to the lease the cause of action accrued on this warranty, as contended by the Nicholson Corporation it would do in event of the reformation of the warranty, we are confronted with the same legal question as to the judgment of the trial court as we would be were we to grant the reformation sought. We deem it, therefore, expedient to consider it as if the well were actually on the premises and the title to the leasehold had failed without wading through the winding process of reasoning which the contentions and authorities would lead us, whatever might be the conclusion reached thereon. If, in so considering the situation, the judgment is not any other than should have been rendered had appellant's contentions as to reformation been sustained, we cannot reverse it for failure to decree reformation. Linked herewith is the contention, supra, of the plaintiff in error that it was entitled to a judgment when the cov-

enants of warranty were so reformed in a sum equal to that recovered by the plaintiff against it. In considering this question, we do not feel at liberty to do otherwise than to confine our deductions to the facts presented in the instant case. Many times legal conclusions properly deducible only from facts removed have been injected into judicial determinations by inadvertent expressions or by an attempt at erudition, the display of which was not necessary to decide the only issue controlling. It does not concern us herein, and we shall not, therefore, discuss any further than we are impelled to, the nature of oil and gas as the same exist in the rocks or sand far beneath the surface of the ground, or in the right to reserve the same by the fee-owner conveying; neither does the interest therein affected by the execution of an ordinary oil lease by the landowner concern us herein. If such interest were the primary concern of the opinions relied upon by plaintiff in error, they are neither controlling nor persuasive on the direct question presented here.

Had the gas well been on the leased premises and the title to the lease failed, the covenants of warranty would have been breached and the situation would have been as if the reformation sought by the Nicholson Corporation had been granted. The question then would have been, What is the measure of damage for its breach? The Kingwood Oil Company had filed no cross-petition in error, but insists that the judgment of the trial court is as much as the plaintiff could, under any circumstances, have recovered against it. As the basis for such contention, the Kingwood says that the lease in question grants an estate in realty within the meaning of section 5980, C. O. S. 1921. That section provides:

"The detriment caused by the breach of a covenant of seizin, right to convey, of warranty or of quiet enjoyment, in a grant of an estate in real property, is deemed to be:

"First. The price paid to the grantor, or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property.

"Second. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding six years; and,

"Third. Any expenses properly incurred by the covenantee in defending his possession."

And further, if the covenants are reformed

so as to include the well, in legal contemplation the measure of damage to which it must respond to the Nicholson Corporation is set out in said section and would be no more than the judgment rendered in favor of said corporation.

The Nicholson Corporation, on the other hand, says section 5988, C. O. S. 1921, fixes the measure of damages. That section provides: .

"The detriment caused by the breach of a warranty of the title of personal property sold is deemed to be the value thereof to the buyer, when he is deprived of its possession, together with any costs which he has become liable to pay, in an action brought for the property by the true owner."

The Nicholson Corporation, based upon said section, in its brief, in part says:

"The assignment contains covenants of ownership of the lease and rights and interests thereunder, and personal property thereon or used in connection therewith and that the Kingwood had good right to sell the same."

It then argues that the covenant is an assurance to the purchaser that the grantor held and possessed the exact estate in quantity and quality which it purported to convey, and that, though such covenants are usually found in conveyances of the fee, it is appropriate in leases and assignments of them. 7 R. C. L., sec. 45, p. 1131; Faller v. Davis, 30 Okla. 56, 118 Pac. 382. These assertions stamp the theory of the Nicholson Corporation, i. e., that the Kingwood Oil Company was liable to it as if the well had been on the land covered by lease and the covenants mentioned, supra, as to the lease, had failed.

If the measure of damage is the amount as contended by the Kingwood, then the Nicholson Corporation got judgment on its cross-petition for all the law would authorize; if, however, the measure of damage is as contended by the Nicholson Corporation, supra, the lower court should be reversed.

We must say, but with reluctance, however, that there is not want of confusion in the authorities relied upon by each of said parties. To say we can entirely harmonize them would be an assumption of an onerous task; this lack of harmony, however, is not so glaring, if the controlling questions presented in the cases referred to had been decided and matters unnecessary to such decisions had been omitted. It is not amiss that we importune indulgence if we undertake to glean the grain from the chaff in the interest of a wholesome conclusion in consonous with right, reason, and the law, applying what we find in the opinions cited which throw light upon the controlling question presented here.

Bearing in mind the language of the lease quoted above, what of the contention of the Nicholson Corporation? Referring again to its brief, we find that it asserts that this court has held in four cases that an oil and gas lease is personal property.

Failure to discern that the difference is great between "real property" and "an estate in real property" would be disastrous to our undertaking herein. The citation of the cases touching judgment liens or the failure of judgments to become liens on oil and gas leasehold estates, or whether such leases are subject to taxation on an ad valorem basis, has no proper place in the contention it seeks to make. The first of such classes of cases, when understood, only determines that a judgment fastens a lien on "real estate," meaning thereby the fee; the cases dealing with ad valorem taxation of oil and gas leases, so far as they concern this jurisdiction, merely point out that the statutes on revenue and taxation have never separated the different estates in realty to the extent of subjecting this class of property, to wit, oil and gas leasehold estates, to an ad valorem tax, although the cases apparently concede that the Legislature might do so if it saw fit. This class of cases must, therefore, be eliminated.

Indulging in unwonted tautology, we must not fail to discern the difference between an interest in, or title to, the oil or gas, as such, and an estate, if any, in the land conveyed by the lease to use and occupy the same for the purpose of making exploration for such minerals.

The first of the four cases specially cited, by the appellant, is Duff v. Keaton, 33 Okla. 92, 124 Pac. 291. This case involved the procedure for the sale of an oil and gas mining lease on land of a minor, the statute prescribing no method for such procedure or for the approval of an agricultural or grazing lease, and the rule announced by the court, when properly limited to the decisive question involved, merely pointed out that within the contemplation of the statute authorizing the sale of a minor's "real estate" for the reason in such statutes given, was not required to be followed in the sale of an oil and gas mining lease, and that the orders made by the probate court, under its general probate power, approving such lease, were invulnerable to a collateral attack in said suit made upon the same. The court

did not go merely to the point of deciding this controlling issue in said cause, which would have determined the controversy, but undertook therein to discuss matters not decisive of the issue involved.

The second case, particularly pointed out by the appellant, is that of Kelly v. Harris, 62 Okla. 236, 162 Pac. 219. The granting clause in the lease there involved was not that found in the lease here involved. And, further, in that case the controlling question was whether the assignee, who was bound by the terms of the lease, would be given protection by a court of equity in their enjoyment when he had failed to comply with the very terms of the lease itself.

The third case particularly referred to by the appellant is that of Woodworth v. Franklin, 85 Okla. 27, 204 Pac. 452, in which case the determination and conclusions reached were that the lease did not vest title to the oil and gas in the land, but merely a right to prospect for the same, no title to the oil and gas vesting until the same were reduced to possession. The reasoning in this case, we think, furnishes deductions, in so far as anything in the case may be made applicable to the instant suit, which go strong to support the contentions made by the Kingwood Oil Company.

The fourth case particularly pointed out by the appellant is the First National Bank v. Dunlop, decided January 22, 1924, being number 14101 (pending on rehearing). The decisive question in that case, and in fact all involved therein, was whether an oil and gas lease was "real estate" within the meaning of the statute which makes a judgment a lien upon "real estate" by reason of section 690, C. O. S. 1921. This case is still pending in the court and it cannot be further discussed.

These four cases are the ones particularly pointed out as holding that an oil and gas lease is personalty. We deem it unnecessary to comment upon the assertion in appellant's brief that an estate in "real property" is itself "real property". That, of course, depends upon the sense in which "real property" is used in any particular statute where a statutory provision is drawn in question.

Leaving, at this point, the authorities relied upon by the plaintiff in error, what of the contention of the Kingwood Oil Company? The task of reviewing the Oklahoma cases in support of its contention has been saved us by the efforts of the Eighth Circuit Court of Appeals in the case of Ewert v. Robinson, 289 Fed. 740. In that case the court reviewed at length the Oklahoma authorities as they bear upon the question presented here by the language of the lease quoted, supra, and the review therein contained, of the Oklahoma cases, is cited in lieu of such discussion herein. After such review, that court said:

"We are not dealing here with the question of whether such leases are a grant of the oil and gas or mineral within the ground. It is settled by the decisions of the Supreme Court, before referred to, that they are not. The mere fact, however, that such leases are not a grant of the oil or gas or mineral in the ground is not a finding that they may not, by their terms, convey an interest in the land or grant more than a mere license or incorporeal hereditament. That question is determined largely by the language employed in the particular leases involved. No rule applicable to all cases could be established. That a lease, such as this, is more than a mere license is, we think, settled in Oklahoma by the case of Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86 (3 A. L. R. 352), and while the court there says the right granted and held separate and apart from the possession of the land itself is an incorporeal hereditament, yet the court also stated, after citation of various holdings as to the nature of interest conveyed in such leases: 'Bearing these principles in mind, it will at once be seen that by this instrument the plaintiffs granted to the defendant a present vested interest in their land."

Where a grant of land is made, coupled with the exclusive privilege of entering thereon and holding possession thereof for the purpose of prospecting for oil and gas, the same constitutes a lease conveying an interest in land and not merely a license to enter and explore for oil and gas. Archer's Law and Practice in Oil and Gas, ch. 3, sec. 1. In the case of Lindley v. Raydure, 239 Fed. 928, the court, in part, said:

"That an estate in the surface of the land of some character vests in the lessee immediately upon the execution of the instrument, I do not understand to be questioned anywhere."

In the case of Kirk v. Mattier (Mo.) 41 S. W. 252, the court said, in discussing a lease which "demised and leased" the land:

"We have no hesitancy in holding that this instrument was a lease and that in a proper case ejectment will lie for the land and the estate acquired thereby. Ejectment will lie for any corporeal hereditament of which the sheriff can deliver possession."

In the case of Barnsdall v. Bradford Oil Co. (Pa.) 74 Atl. 207, it was held that a lease of this character conveyed an inter-

est in the land, and not merely license to enter and operate for oil and gas. To the same effect are Harris v. Ohio Oil Co. (Ohio) 48 N. E. 502; Carr v. Huntington Light & Fuel Co. (Ind.) 70 N. E. 552; Wilson v. Youst (W. Va.) 28 S. E. 781; South Penn. Oil Co. v. McIntyre (W. Va.) 28 S. E. 922; Priddy v. Green (Tex. Civ. App.) 220 S. W. 243.

In the case of Heller v. Dailey (Ind.) 63 N. E. 490, the court said:

"A right to take such minerals (oil and gas) from the land constitutes an interest in the land."

Bearing in mind these authorities, we may well be asked what is the phraseology of the statute which the defendant in error contends governs the measure of damages to the instant case? This section is 5980, C. O. S. 1921, and fixes the measure at the amount received, not where title to "real estate" fails, but where the "title to an estate in real property" fails; but does it include such an interest as the above authorities show an oil and gas lease vests in the lessee? The degree, quantity, nature, and extent of interest which a person has in real property is usually referred to as an estate. It varies from absolute ownership down to naked possession. Bouvier's Law Dictionary. This is the common acceptance of the meaning of an estate in real property, and there is nothing shrouding the said statute on measure of damages quoted, supra, that indicates that when the statute uses the terminology—

"The detriment caused by the breach of a covenant of seizin, of right to convey, of warranty, or of quiet enjoyment, in a grant of an estate in real property. * * * "

—that the same referred to an interest or interests in real property to the exclusion of that these authorities determined an oil and gas lease conveyed.

The judgment of the trial court having given the appellant, on its cross-petition, judgment for the proper amount, measured by this rule, it could not be increased by sustaining the other assignments it makes in this court. Affirmed.

NICHOLSON, C. J., and HARRISON, MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 27 Cyc. p. 724. (2) 27 Cyc. p. 726. (3) 4 C. J. p. 649, § 2541.